UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 07-55988

    LEHNERT, KENNETH P.,                         Chapter 13
    LEHNERT, KIMBERLY A.,
                                                    Honorable Walter Shapero
        Debtors.

_____/

## OPINION DENYING CHAPTER 13 PLAN CONFIRMATION

This matter is before the Court for confirmation of debtors Kenneth and Kimberly Lehnert's proposed chapter 13 plan, (Docket No. 14), objections to such plan having been filed by the chapter 13 trustee and Marianne Sadek, the conservator for Kathleen G. Lehnert, the estate's largest creditor. (Docket Nos. 56, 60, 74, 83). Several evidentiary hearings were held, and the matter was taken under advisement with this Opinion to follow.

### I.

Debtors filed their proposed chapter 13 plan on August 29, 2007. The plan, as filed, states that Debtors will make bi-weekly payments of $84.13 for 36 months and provides:

> Class Eight - General Unsecured Claims shall be paid 0 % of such amounts with interest at the rate of 0.00 % per annum. This Plan shall provide either the percent stated or shall continue for the length stated, whichever will offer the greater dividend to general unsecured creditors in this class.

The only pre-petition creditors addressed by the plan are the general unsecured creditors, and the plan proposed to pay them a 0% dividend.[1] The estate's largest creditor is Marianne Sadek, as conservator for Kathleen G. Lehnert. Sadek currently has a § 523(a)(2) and § 523(a)(6) non-dischargeability claim pending against Debtors for $492,000.00 plus costs, interest, and attorney fees. The claim arises out of Debtors' alleged fraudulent inducement of Kathleen G. Lehnert, a

---

[1] Debtors only secured creditor at the time of the plan filing, Litton Loan Servicing, was to have their claim satisfied in full by surrender of the real property collateral, and would therefore not be treated under the plan.

relative with limited mental capacity, to sell them her house for an amount far below market value and then return to them all of the proceeds which they paid for the house. The practical effect of the plan, as originally proposed, was that all plan payments would go to Debtors' attorney, to the exclusion of Sadek and other unsecured creditors.

Not surprisingly, the trustee and Sadek objected to Debtors' plan. A significant point of contention is the accuracy of Schedules I and J and the amount Debtors propose to pay into the plan. Schedule I lists gross monthly income of $4,333.00. The morning of the May 27, 2008 hearing, trustee and Sadek received copies of previously requested pay advances which showed current gross income of roughly $1,000.00 more than that listed on Schedule I. Debtors' counsel explained that the amount on Schedule I was calculated upon the "contract rate" level of pay Debtor received in his occupation as a firefighter and didn't take into account overtime compensation. Sadek points to tax returns which show that in 2007 Debtor earned $59,577.00 in gross wages ($4,964.75 monthly average); in 2006, Debtor earned $63,488.00 in gross wages ($5,290.66 monthly average); and in 2005, Debtor earned $58,547.00 in gross wages ($4,878.91 monthly average). Sadek and the trustee therefore argue that Debtor earns more than is listed on Schedule I and could pay the excess income into a chapter 13 plan. Debtors were given an opportunity to amend Schedule I, but declined to do so as counsel determined it was not necessary.

At the July 30, 2008 hearing, Debtors' counsel informed that the amount listed for rent on Schedule J was actually $100.00 in excess of what Debtors were paying, and therefore the bi-weekly plan payments could be increased to $159.14. Counsel also informed that Debtors were agreeable to extending their plan out over 60 months, and thereby, according to some calculations,[2] increase the dividend to unsecured creditors from 0% to 4%. Sadek continued to object to confirmation on a variety of grounds.[3]

**II.**

---

[2] Debtors' Counsel represented that the trustee (who was not in attendance at the July 30 hearing) calculated a $159.14 bi-weekly payment over 60 months would result in a 4% dividend. Of course, as was acknowledged, without knowing the amount of Debtors' attorney fees, it is impossible to know how much of the proposed plan payments would be available for distribution to unsecured creditors.

[3] Sadek also continued to request in her supplemental objection that the case be dismissed pursuant to § 1307(c)(1) and (4). (See Docket No. 83). However, these grounds were relied upon in Sadek's *Motion to Dismiss* (Docket No. 51) which, when being heard alongside the current objection to confirmation at the May 27, 2008 hearing, was denied. Accordingly, the Court will not again consider such argument for purposes of the instant motion objecting to confirmation.

For a chapter 13 plan to be confirmed, the requirements set forth in 11 U.S.C. § 1325 must be satisfied. The trustee and Sadek allege that several of these requirements are lacking in Debtors' plan, but "good faith" has been the primary focus. As the objecting parties, trustee and Sadek have the burden of proof. *Shortridge v. Ruskin (In re Shortridge)*, 1995 U.S. App. LEXIS 32890 (6th Cir. Mich. Aug. 31, 1995).

Section 1325(a)(3) requires that a chapter 13 plan be "proposed in good faith and not by any means forbidden by law." In determining whether a plan has been proposed in good faith, courts in the Sixth Circuit examine the totality of the circumstances. *In re Okoreeh-Baah*, 836 F.2d 1030, 1033 (6th Cir. 1988). The *Okoreeh-Baah* Court explained:

> In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources.

*Id.* In making this determination, courts look to the following factors:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*In re Caldwell*, 851 F.2d 852, 859 (6th Cir. 1988). The following considerations should also be taken into account:

(1) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code;

(2) good faith does not necessarily require substantial repayment of the unsecured claims;

(3) the fact that a debt is nondischargeable under Chapter 7 does not make it nondischargeable under Chapter 13; and

(4) the fact that a debtor seeks to discharge an otherwise nondischargeable debt is not, per se, evidence of bad faith but may be considered as part of the totality of the circumstances analysis.

*Id.* at 859-60. No one individual factor is dispositive. *Id.* at 860.

Several of the above factors are helpful in examining this matter. First and foremost, the amount of the proposed plan payments in light of the amount of monthly income surplus. The evidence introduced at the hearings leaves no doubt that Debtors' Schedule I understates income. The 2007 tax returns showed an average gross monthly income of $4,964.75, an amount materially larger than the $4,333.00 listed on the Schedule I filed August 29, 2007. Counsel informed that the Schedule I was accurate at the time it was filed, which indicates that it should have been subsequently amended because the income situation would have noticeably changed in the final four months of 2007. Moreover, based on the gross income shown on the pay advances which trustee represented to the Court as being roughly $1,000.00 per month in excess of the Schedule I figure (without any dispute from Debtors' counsel), it seems that Debtors continue to have gross income significantly in excess of what is listed. With such excess income, there should be a greater monthly surplus with which to fund a plan payment. At the May 27 hearing, the Court gave the Debtors the opportunity to amend their Schedules, if necessary, prior to the next hearing. At the July 30 hearing, counsel informed that she didn't find it necessary to amend. In light of the evidence produced, the Schedule I figure is not credible and there appears to be significantly more gross income and disposable income

available to fund a plan. This factor weighs strongly against confirmation.

While good faith does not necessarily require a substantial repayment to creditors, the originally proposed plan provided payment of only attorney fees, leaving a 0% distribution for unsecured creditors. Such a proposal does not strike the Court as a good faith attempt to repay pre-petition creditors. While subsequent oral representations of counsel have increased the payments, and hence the unsecured creditor dividend to something in the neighborhood of 4%, the Court is still less than convinced of the presence of a sincere motivation to repay pre-petition creditors.

The nature of the debt is also a consideration which is to be taken into account in determining good faith. Here, the debt represented by Sadek, by far the largest of the unsecured creditors, is the subject of a pending § 523(a)(2) and (a)(6) non-dischargeability action. (Adv. Pro. 08-4523).

The Court also considers the fact that Debtors' received a 2007 tax refund in excess of $3,500 sometime in January or April 2008 and purportedly expended such on repairs and improvements of the property they are occupying rather than turning it over to the trustee, a fact which raises some questions regarding good faith. Debtor testified that he was confused as to the status of the case at the time he received the refund and didn't know it needed to be turned over to the trustee, but this explanation was not entirely credible. While Debtors' counsel represents that the tax refund will be repaid to the estate over the life of the plan, the question must be asked: what would be the source of such funds? If the plan already accounts for the disposable income, there isn't any readily apparent source. Debtors' behavior regarding these funds while the current plan is awaiting confirmation raises a question concerning sincerity.

The totality of the circumstances, as outlined above, leads the Court to conclude that Sadek and the trustee have sustained their burden of showing that Debtor's plan was not filed in good faith and therefore should not be confirmed.

### III.

In sum, the totality of the circumstances indicates to the Court that the current plan is not proposed in good faith. Accordingly, confirmation of the proposed chapter 13 plan is **DENIED**. Debtors shall have thirty (30) days from entry of the accompanying order in which to file a new plan.

**Signed on January 14, 2009**

                                                       **/s/ Walter Shapero**
                                              **Walter Shapero**
                                              **United States Bankruptcy Judge**